**IN THE SUPREME COURT OF MISSISSIPPI**
**NO. 1999-KA-00676-SCT**

*MARK McKEE*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/01/1999 |
| TRIAL JUDGE: | HON. SAMAC S. RICHARDSON |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAN W. DUGGAN, JR. |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  JEAN SMITH VAUGHAN |
| DISTRICT ATTORNEY: | RICHARD D. MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/26/2001 |
| MOTION FOR REHEARING FILED: | 5/10/2001; denied 8/23/2001 |
| MANDATE ISSUED: | 8/30/2001 |

**EN BANC.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. Mark McKee was tried for and convicted of robbery. He appeals to this Court where we are asked to determine whether the verdict was against the weight of the evidence, whether he was entitled to a lesser-included offense instruction, and whether the trial court erred when it allowed prior bad act evidence to be admitted into evidence. We find no merit to any of these issues and therefore affirm.

**FACTS AND PROCEEDINGS BELOW**

¶2. On the night of March 10, 1998, Linda Pelly (hereinafter Victim) was shopping at Albertson's grocery store in Brandon. As she was putting her groceries into her car, a man approached her, stole her purse, and fled. At trial, the Victim described the chain of events in the following manner:

> And I had seen a person, the car next to me, seen a person around the car and kind of stop at the trunk. And I thought, well, he needed to get something out of the trunk. And then when he came on around and came up between the cars, then that's when I got very uncomfortable. And I decided this is not right. And about that time, he bumped into me and snatched my purse and ran.

¶3. The Victim did not see the man's face and could only identify him as a black male wearing a stocking cap on his head and a floppy canvas coat. No weapon was used during the commission of the theft. The Victim testified that she became "uncomfortable," "frightened" and "afraid" as the man approached her prior to taking her purse.

¶4. The Rankin County Sheriff's Department responded to the incident and, through its investigation,

developed McKee as a suspect in the theft. On March 11, 1998, the day after the theft, detectives Doug Holloway and Hulon Craft arrested McKee at his residence. McKee was then transported to the Rankin County Sheriff's Department. Upon arrival at the Sheriff's Department, detectives Craft and William Dodd mirandized McKee, who then informed them that he would not speak to them and would only speak to detective Holloway. McKee also signed a waiver of rights form. Holloway testified that he and McKee spoke alone, during which conversation McKee admitted that "he ran up behind the lady, grabbed her purse, ran back to a car that was waiting. They then left the area. And along the way, they just threw out the contents and the purse at various locations." According to Holloway, after McKee's initial confession, he then repeated this confession to all three detectives.[1] Dodd and Craft confirmed this, testifying that after speaking alone with Holloway, McKee confessed to the theft in the presence of all three detectives. Dodd testified that McKee also admitted wearing the clothes which the Victim described as being worn by the thief. Holloway testified about having seen a jacket fitting the description of that worn by the thief in McKee's home, and McKee testified that his mother owned a similar jacket. At trial, Craft testified that during the confession to the three detectives, McKee stated that he needed help because he was still using crack cocaine. Counsel for McKee objected and moved for a mistrial based on this statement, but the objection and mistrial motion were both overruled by the trial court. Dodd testified that in addition to confessing to the theft, McKee also offered to show the detectives where he dumped the Victim's purse. On March 12, 1998, detectives Dodd and Craft, accompanied by McKee, went out to a location on Grant's Ferry Road where McKee allegedly told them he had thrown the purse out. Dodd and Craft testified that they recovered the Victim's wallet and some papers belonging to her at that location, but failed to recover the purse itself. None of the items purportedly recovered on Grant's Ferry Road was introduced into evidence at trial.

¶5. During his testimony, McKee acknowledged having been mirandized and waving his rights, but he denied having made any confession on the day of his arrest. McKee's confession was not written, video taped or tape recorded. He also denied having told any detective that he threw the purse out on the side of the road, and he denied telling them where to look for it. McKee testified that he was working at the Rankin Medical Building on State Street in Jackson, Mississippi, at the time the theft occurred. However, he conceded that he could not produce any evidence to support this contention.

¶6. After all the evidence was presented, the jury found McKee guilty as charged in the indictment of strong arm robbery, in violation of Miss. Code Ann. § 97-3-73 (2000). McKee, sentenced as a habitual offender[2] pursuant to Miss. Code Ann. § 99-19-81 (2000), was ordered to serve fifteen (15) years in the custody of the Department of Corrections without possibility of probation, parole, or early release. McKee now appeals his conviction, raising the following assignment of errors:

## ISSUES

**I. THE TRIAL COURT ERRED BY FAILING TO GRANT APPELLANT'S MOTION FOR DIRECTED VERDICT AND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT; AND THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE.**

**II. THE TRIAL COURT ERRED BY DENYING DEFENSE INSTRUCTION D-7, A LESSER INCLUDED OFFENSE INSTRUCTION.**

**III. THE TRIAL COURT ERRED BY IMPROPERLY ALLOWING THE**

**INTRODUCTION OF PRIOR BAD ACTS EVIDENCE.**

**LEGAL ANALYSIS**

**I.**

**Was the verdict against the weight of the evidence?**

¶7. We have stated:

> In reviewing the question of whether a verdict is sufficiently supported by the evidence, the Supreme Court is required to look at the totality of the circumstances, and "[o]ur concern here is whether the evidence in the record is sufficient to sustain a finding adverse to [the defendant] on each element of the offense . . . [W]ith respect to each element, of the offense, [we must] consider all of the evidence--not just the evidence which supports the case for the prosecution--in light most favorable to the verdict."

*Yates v. State*, 685 So.2d 715, 718 (Miss. 1996) (citing *Wetz v. State*, 503 So.2d 803, 808 (Miss. 1987)).

¶8. "Every person who shall feloniously take the personal property of another, in his presence or from his person and against his will, by violence to his person or by putting such person in fear of some immediate injury to his person, shall be guilty of robbery." Miss. Code Ann. § 97-3-73 (2000). "Every person convicted of robbery shall be punished by imprisonment in the penitentiary for a term not more than fifteen years." Miss. Code Ann. § 97-3-75 (2000).

¶9. Through her testimony, the Victim stated that her purse was taken against her will. She also stated that she saw the thief approach her prior to the theft and that as he walked toward her, she became "uncomfortable," "frightened" and "afraid." Through this testimony, the State established the elements of robbery (i.e. the taking of one's personal property from her person and against her will, by putting such person in fear of some immediate injury to her person). McKee, however, argues that the State failed to prove the thief in this case gained possession of the Victim's purse by placing her in fear of immediate injury, and in doing so, failed to prove that element of robbery. He does not contest that the State proved the other elements of the offense. Notwithstanding his contention, McKee offered no evidence to prove that the Victim was not fearful when her purse was taken (i.e. evidence that the Victim never saw the thief, that her demeanor was relaxed and casual even after she saw the thief, etc.).

¶10. In support of his argument, McKee cites *Clayton v. State*, 759 So. 2d 1169 (Miss. 1999), wherein this Court overturned a defendant's conviction for robbery on the grounds that the State failed to prove that the defendant obtained the victim's property by placing her in immediate fear of personal injury. *Clayton* is factually distinguishable, and therefore inapplicable, to the case sub judice, because in *Clayton*, the thief approached the victim from behind, and the victim never saw the thief until after the theft had occurred. Consequently, the theft in *Clayton* was not "effectuated through fear of immediate injury to the victim." *Id.* at 1170-71.

¶11. McKee argues the verdict cannot stand because the Victim never saw the thief's face, and, therefore, could not positively say that he was indeed the thief. However, three detectives all testified that McKee admitted that he was the one who took the Victim's purse. In *Young v. State*, 352 So.2d 815 (Miss.

1977), this Court affirmed an armed robbery conviction under similar circumstances. "Defendant correctly asserts that [the victim] did not positively identify the defendant and that her testimony, standing alone, would not be sufficient to convict; however, her testimony and defendant's confession is sufficient to support the verdict of the jury." *Id.* at 819.

¶12. McKee also asserts that the verdict is against the weight of the evidence because, notwithstanding the testimony of the three detectives to the contrary, McKee testified that he neither confessed to the crime, nor told the detectives that he had thrown the purse and its contents out on the side of the road. He points out that there is no written or taped proof of the alleged confession.

> This Court has in numerous cases, too many to mention, said that when the evidence is conflicting, the jury will be the sole judge of the credibility of witnesses and the weight and worth of their testimony . . . in a criminal prosecution the jury may accept the testimony of some witnesses and reject that of others, and that they may accept in part and reject in part the evidence on behalf of the state or on behalf of the accused. In other words, the credibility of witnesses is not for the reviewing court.

*Gathright v. State*, 380 So.2d 1276, 1278 (Miss. 1980). In finding McKee guilty, the jury obviously rejected his testimony regarding the confession and accepted that of the detectives, a decision which was well within its discretion.

¶13. We hold that considering all of the evidence in a light most favorable to the verdict, the State proved each element of the offense of robbery beyond a reasonable doubt, and further proved that McKee was the person who committed the offense. Therefore, the verdict is not against the weight of the evidence.

### Did the trial court err when it denied McKee's

### motion for a directed verdict and j.n.o.v.?

¶14. When considering whether motions for directed verdict and j.n.o.v. have been properly denied, the standards of review are essentially the same as when considering whether the verdict is against the weight of the evidence.

> In considering a motion for directed verdict, the reviewing court must consider evidence introduced in light most favorable to State, accepting all evidence introduced by the State as true, together with all reasonable inferences therefrom; if there is sufficient evidence to support a guilty verdict, motion for directed verdict must be overruled.

*Edwards v. State*, 615 So.2d 590, 594 (Miss. 1993). Likewise, this Court has stated:

> Where a defendant has moved for j.n.o.v., the trial court must consider all of the evidence--not just the evidence which supports the State's case--in the light most favorable to the State. The State must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point in favor of the defendant with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty, granting the motion is required. On the other hand, if there is substantial evidence opposed to the motion--that is, evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions--the motion should be denied.

*May v. State*, 460 So.2d 778, 781 (Miss. 1984).

¶15. Therefore, for the reasons discussed above, this Court finds that, when viewing the evidence in a light most favorable to the State, (1) McKee's motion for directed verdict was properly denied because there is sufficient evidence in the record to support a guilty verdict; and (2) McKee's motion for j.n.o.v. was properly denied because the evidence was not such that reasonable men could not find McKee guilty beyond a reasonable doubt.

## II.

## Did the trial court err by denying defense instruction D-7, a lesser

## included offense instruction covering petit theft?

¶16. Defense instruction D-7, which was refused by the trial court, reads as follows:

The Court instructs the jury that if you find that the state has failed to prove any one of the essential elements of the crime STRONG ARM ROBBERY, you must find the defendant not guilty. You will then proceed with your deliberations to decide whether the state has proved beyond a reasonable doubt all the elements of the lesser crime of PETTY [sic] LARCENY. If warranted by the evidence, you may find MARK MCKEE guilty of a crime lesser than STRONG ARM ROBBERY. However, notwithstanding that right, it is your duty to accept the law as given to you by the court. If the facts and the law warrant a conviction for the crime of STRONG ARM ROBBERY, then it is your duty to make such a finding, uninfluenced by your power to find a lesser offense. This provision is not designed to relieve you from the performance of an unpleasant duty. It is included to prevent a failure of justice if the evidence fails to prove the original charge, but does justify a verdict for PETTY [sic] LARCENY. "PETTY [sic] LARCENY is defined as the unlawful taking and carrying away of the personal property of another with, but lacks the element of placing someone in fear."

¶17. Miss. Code Ann. § 97-17-43(1) (2000) defines the offense of petit larceny in the following manner:

If any person shall feloniously take, steal and carry away any personal property of another under the value of Two Hundred Fifty Dollars ($250.00), he shall be guilty of petit larceny and, upon conviction, shall be punished by imprisonment in the county jail not exceeding six (6) months or by fine not exceeding One Thousand Dollars ($1,000.00), or both.

¶18. Jury instruction D-7, as submitted by McKee, contained an incomplete statement of the law. D-7's definition of petit larceny failed to state that the item stolen must be valued at under $250 to qualify for that offense. This Court has observed:

[W]here under the evidence a party is entitled to have the jury instructed regarding a particular issue and where that party requests an instruction which for whatever reason is inadequate in form or content, the trial judge has the responsibility either to reform and correct the proffered instruction himself or to advise counsel on the record of the perceived deficiencies therein and to afford counsel a reasonable opportunity to prepare a new, corrected instruction.

*Harper v. State*, 478 So.2d 1017, 1018 (Miss. 1985). If McKee was entitled to the lesser included offense instruction, the trial court should have either corrected D-7 on its own, or allowed McKee an

opportunity to correct D-7. Therefore, the issue becomes whether McKee was entitled to the lesser-included offense instruction.

¶19. "We have repeatedly held that lesser-included offense instructions should not be indiscriminately granted. Rather, they should be submitted to the jury only where there is an evidentiary basis in the record therefor." *Lee v. State*, 469 So. 2d 1225, 1228 (Miss. 1985). In the same way, this Court has also held that a jury instruction may be denied if it misstates the law, is covered by other instructions, or is without foundation in the evidence. *Heidel v. State*, 587 So.2d 835, 842 (Miss. 1991). This Court articulated the standard to be applied in deciding whether a lesser-included offense instruction should be granted:

> [A] lesser included offense instruction should be granted unless the trial judge---and ultimately this Court---can say, taking the evidence in the light most favorable to the accused, and considering all reasonable references which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of the lesser included offense (and conversely not guilty of at least one essential element of the principal charge).

*Harper v. State*, 478 So.2d at 1021.

¶20. The record contains no proof of the value of the purse or its contents. Therefore, we hold that the trial court did not commit reversible error in refusing jury instruction D-7.

### III.

### Did the trial court err by improperly allowing the

### introduction of prior bad acts evidence?

¶21. Rule 404(b) of the Mississippi Rules of Evidence provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

M.R.E. 404(b).

¶22. "If the evidence is allowed under Rule 404(b), it must still pass through Rule 403, which is the ultimate filter through which all otherwise admissible evidence must pass." *Bounds v. State*, 688 So.2d 1362, 1370 (Miss. 1997). "The decision of whether to admit evidence is left to a trial court's broad discretion." *Brown v. State*, 534 So.2d 1019, 1024-25 (Miss.1988).

¶23. Detective Craft testified that McKee, while confessing to the robbery, said that he needed help because he was still on crack cocaine. Counsel for McKee objected and moved for a mistrial based on that statement, both of which were overruled by the trial court. The trial court did not perform a M.R.E. 403 balancing test on the record, nor did it give, or offer to give, a limiting instruction regarding the crack cocaine statement. However, we find this error to be harmless.

¶24. An error is harmless when it is apparent on the face of the record that a fair-minded jury could have arrived at no verdict other than that of guilty. *Floyd v. City of Crystal Springs*, 749 So.2d 110, 120

(Miss. 1999) (citing *Forrest v. State*, 335 So.2d 900, 903 (Miss. 1976)). This Court has previously held that "[w]here the prejudice from an erroneous admission of evidence dims in comparison to other overwhelming evidence, this Court has refused to reverse." *Carter v. State*, 722 So.2d 1258, 1262 (Miss. 1998) (citing *Holland v. State*, 587 So.2d 848, 864 (Miss. 1991)). In this case, the evidence of McKee's guilt is overwhelming; therefore, a fair-minded jury could have arrived at no verdict other than guilty.

¶25. The testimony regarding McKee's use of cocaine was elicited by Officer Craft on direct examination by the State. The State never referred again to any point later in the trial to the statement. In fact, the only further mention of the statement was brought out by defense counsel on cross-examination of Officer Craft - twice, in fact. Immediately following the testimony of Officer Craft, defense counsel made his opening statement to the jury in which he informed the jury of three prior convictions of McKee. McKee then testified regarding the convictions. Notably, the offense which McKee has been convicted is not drug related, lessening the possibility that he was prejudiced by the testimony regarding his drug use. However, the prior convictions brought out by defense counsel were theft offenses, as was that of which McKee was convicted here.

¶26. We find that the prejudice, if any, from the erroneous admission of Officer Craft's testimony, dims in light of the overwhelming evidence of McKee's guilt presented by the State and in light of the fact that McKee's own counsel repeatedly emphasized his prior theft convictions. The weight and potential for unfair prejudice resulting from Officer Craft's testimony pales in comparison to the evidence of McKee's guilt. Clearly, Officer Craft's testimony did not prejudice McKee to such an extent as to require reversal.

¶27. Therefore, we hold, that the trial court did not commit reversible error by admitting the prior bad acts evidence.

## CONCLUSION

¶28. The guilty verdict in this case is supported by the evidence. The testimony of the Victim, which established all the elements of the offense, coupled with McKee's confession to the theft, proved his guilt beyond a reasonable doubt. McKee was not entitled to the lesser-included offense instruction of petit larceny, because one of the elements of that offense is that the value of the item(s) stolen must be under $250. There was no proof in the record regarding the value of the Victim's purse. The trial court's admission of the evidence against the defendant does not rise to reversible error. The prejudice from the admission, if any, pales in comparison to the evidence of McKee's guilt. Accordingly, McKee's conviction and sentence for strong arm robbery are affirmed.

¶29. **CONVICTION OF STRONG ARM ROBBERY AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS A HABITUAL OFFENDER WITHOUT THE POSSIBILITY OF PAROLE UNDER § 99-19-81 OF THE MISSISSIPPI CODE OF 1972, WITH CONDITIONS, AFFIRMED.**

**PITTMAN, C.J., MILLS, WALLER, COBB, DIAZ AND EASLEY, JJ., CONCUR. BANKS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, P.J.**

**BANKS, PRESIDING JUSTICE, DISSENTING:**

¶30. Because I disagree with the majority's contention that the determination of the phrase "putting such

person in fear" in our robbery statute permits a subjective test, its holding that McKee was not entitled to the lesser-related instructions, and its resolution of the crime evidence issues, I respectfully dissent.

## I.

¶31. The majority suggests that because the victim stated that she was scared at some point there is sufficient proof of "putting such person in fear of some immediate injury to his person" under Miss. Code Ann. § 97-3-73 (2000). I disagree. The statute requires that the accused put the victim in fear of immediate injury to his person. Generalized fear is not enough. Particularized fear of immediate injury not intentionally induced by the acts of the accused are not enough. The accused has to do something that would place the ordinary person in fear of immediate bodily injury. *Clayton v. State*, 759 So.2d 1169, 1172-73 (Miss. 1999).

¶32. Here, McKee simply walked between two cars in a parking lot in close proximity to the victim. That, in my view, is insufficient to prove of McKee did something to put Pelly in fear. Moreover, the description of the event does not suggest that there was fear until after the purse was snatched and she realized what had happened.

¶33. *Clayton*, in my view, is controlling here. Miss. Code Ann. § 97-3-73 (2000) provides: "Every person who shall feloniously take the personal property of another, in his presence or from his person and against his will, by violence to his person or by putting such person in fear of some immediate injury to his person, shall be guilty of robbery." We specifically held in *Clayton* that "in order to prove robbery, the State must show the defendant took some action which was intended by him to intimidate or cause fear in the victim." *Clayton*, 759 So.2d at 1172 (citing *Register v. State*, 232 Miss. 128, 132-33, 97 So.2d 919, 921-22 (1957)). "In *Register* we held [t]he fear of physical ill must come before the relinquishment of the property to the thief, and not after; else the offense is not robbery." *Id.*

¶34. The majority makes a meager attempt to distinguish *Clayton*, from the case at bar. The majority states simply that *Clayton* is distinguishable because the victim there, unlike in the instant case, never saw the "purse snatcher" before the "snatching." Seeing the accused, however, is not enough to satisfy the elements of our statute.

¶35. The State simply did not prove this element of robbery. Specifically, the State did not prove that McKee took some action which was intended to put the victim in fear. All the State proved is that the victim saw McKee and that she felt uncomfortable. This is not enough to satisfy the *Clayton* standard. At best, the evidence raises a jury question as to whether the victim was afraid before or only after her purse was taken. Either is insufficient to the task of showing that McKee committed some act with the intent of putting the victim in fear. I would, therefore, reverse and render as to the robbery conviction and remand for re-sentencing on the crime of petit larceny.

## II.

¶36. The majority holds that McKee was not entitled to the lesser-related instruction of petit larceny, because the proffered instruction did not require that the jury find that the value of the property take was less than $250. Miss. Code Ann. § 97-17-43 (2000) provides that a person who "feloniously take, steal, and carry away the personal property of another" which has a value of less than $250 is guilty of petit larceny. Miss. Code Ann. § 97-17-41 (2000) provides that a person who feloniously takes and carry away

the personal property of another which has a value of $250 or more is guilty of grand larceny.

¶37. The majority's holding incorrectly places the burden upon McKee to prove that the purse and its contents were less then $250. Our precedents are clear that the failure to prove value in a larceny prosecution results in a conviction for petit larceny where all other elements are shown. *Dulin v. State*, 507 So.2d 897, 898 (Miss. 1987); *Jackson v. State*, 450 So.2d 1081, 1082-83 (Miss. 1984); *Barry v. State*, 406 So.2d 45, 47 (Miss. 1981). The majority's holding cuts against this fundamental rule. It, in essence, requires the defendant to disprove an element of grand larceny, in order to receive a lesser instruction for petit larceny. Moreover, the majority's holding creates a hole in our law to the effect that the failure to offer proof as to an amount results of necessity in a verdict of not guilty of either petit or grand larceny. Surely, this was not intended by the Legislature. Here, because there is no evidence as to the value of the items taken, the appropriate lesser instruction was the petit larceny instruction proffered.

## III.

¶38. Finally, the judgment should be reversed because the State injected the extraneous matter of McKee's cocaine use into the proceedings. I also find error in the trial court's failure to provide a limiting instruction in regard to that evidence sua sponte.

¶39. The Mississippi Rules of Evidence provide that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Miss. R. Evid. 404(b). This Court has added that "in order to pass muster under Rule 404(b), evidence must be such that it satisfies some other evidentiary purpose beyond simply showing that [the defendant] is the sort of fellow likely to commit the crime charged." *Watts v. State*, 635 So. 2d 1364, 1368 (Miss. 1994). Where the trial court finds evidence admissible under Rule 404(b), the trial court must, under Rule 403, still consider whether "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Miss. R. Evid. 403. This Court has stated that "[i]n this sense Rule 403 is an ultimate filter through which all otherwise admissible evidence must pass." *Jenkins v. State*, 507 So. 2d 89, 93 (Miss. 1987).

¶40. This Court has also emphasized that:

> wherever 404(b) evidence is offered and there is an objection which is overruled, the objection shall be deemed an invocation of the right to M.R.E. 403 balancing analysis and a limiting instruction. The court shall conduct an M.R.E. analysis and, if the evidence passes that hurdle, give a limiting instruction unless the party objecting to the evidence objects to giving the limiting instruction.

*Smith v. State*, 656 So.2d 95, 100 (Miss. 1995). The trial court should provide such a limiting instruction sua sponte. *Burrell v. State*, 727 So. 2d 761, 768-69 (Miss. Ct. App. 1998). Failure to give a limiting instruction sua sponte may not be fatal where it is merely harmless error. *Webster v. State*, 754 So. 2d 1232, 1240 (Miss. 2000).

¶41. On direct examination by the State, Detective Hulon Craft testified that McKee, while confessing to

the robbery, stated that he needed help with his addiction to cocaine. Counsel for McKee objected and moved for a mistrial based on that statement, both of which were overruled by the trial court. The State cannot claim, nor does the majority here attempt to claim, that this evidence shows motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Therefore, such testimony must be held inadmissible under Rule 404(b).

¶42. Even were such evidence admissible under Rule 404(b), it still would be excluded under Rule 403. Clearly, the evidence of McKee's cocaine addiction has no probative value as to whether he committed robbery. As the majority correctly points out, robbery consists of the felonious taking away of "personal property from another, in his presence or from his person and against his will, by violence to his person or by putting such person in fear of some immediate injury to his person." Miss. Code Ann. § 97-3-73 (2000). The fact that McKee had an addiction simply has no relevance under our robbery statute.

¶43. The majority characterizes the admission of this evidence as harmless error. I disagree. The introduction of evidence of McKee's addiction served no legitimate purpose here but rather served only to characterize McKee as a criminal who uses illegal drugs. The case is clearly close as to whether a robbery as opposed to some lesser offense occurred. Whatever probative value the evidence of McKee's addiction had was completely overwhelmed by the danger that the jury would convict McKee simply because he used drugs.

¶44. The majority also emphasizes that the State offered no additional testimony about McKee's addiction, that counsel for McKee questioned Detective Craft about McKee's addiction on cross-examination, and that McKee informed the jury that he had three prior theft-related convictions. None of these facts, however, makes the admission of Detective Craft's testimony any less prejudicial. First, the mere mention of McKee's addiction could have improperly influenced the jury. The fact that more evidence was not presented by the State does not change the possibility of prejudice. Second, McKee did not waive any objection to the erroneous admission of this evidence by questioning Detective Craft on this topic. When the trial court allowed evidence of McKee's addiction to be admitted, McKee had no alternative but to respond to these allegations on cross-examination.

¶45. Further, the majority finds the trial court's failure to provide a limiting instruction to the jury to be harmless error. Once again, I cannot agree. By objecting to the introduction of Detective Craft's testimony, McKee successfully invoked his right to a limiting instruction from the trial court. The trial court, however, did not grant such an instruction. As a result, the jury was not informed that it should refrain from considering evidence of McKee's cocaine addiction in its deliberations. Because this Court cannot possibly know what evidence the jury considered in finding McKee guilty of robbery, I find it untenable to hold the trial court's failure to give a limiting instruction harmless.

¶46. The majority also suggests that because robbery is not "drug related," the possibility of the jury being prejudiced is "lessened," but, as I have just stated, this Court cannot read the minds of these jurors to determine whether they were, in fact, prejudiced. The underlying purpose of Rules 404(b) and 403 is to ensure that there is no prejudice, not that prejudice is merely "lessened." Certainly, as the majority points out, the evidence of McKee's guilt appears overwhelming; however, because the trial court erred in not providing a limiting instruction, I dissent.

**IV.**

¶47. For the foregoing reasons I would reverse and render as to robbery and remand for re-sentencing for the crime of petit larceny. Failing that, the very least that is required is that the conviction be reversed and the case remanded for a new trial because of the errors in refusing the lesser-related offense instruction and in allowing the other crimes evidence.

**McRAE, P.J., JOINS THIS OPINION.**

1. McKee denies having made any such confession, and a Motion to Suppress the alleged confession was filed. After hearing evidence on this motion prior to opening statements, the trial court denied the motion, finding the issue to be a factual one which needed to be determined by the jury.

2. McKee testified that he had three (3) previous felony convictions in the Rankin County Circuit Court. Court documents show that he was convicted of burglary of a dwelling in 1989 and 1993 and that he was also convicted of grand larceny in 1995.